h KIRBY, Judge.
The Louisiana Supreme Court remanded this writ application to this Court for consideration and action.[1] In this applica *752 tion, relator, Entergy New Orleans, Inc. (“Entergy”), formerly known as New Orleans Public Service, Inc. (“NOPSI”), seeks this Court’s supervisory jurisdiction to review a trial court ruling referring its exception of prescription to the merits and overruling its other exceptions. The overruled exceptions include lack of subject matter jurisdiction, no cause of action, no right of action, unauthorized use of class action procedure, peremption, prematurity and nonconformity of the petition with the requirements of La. C.C.P. art. 891. For reasons that follow, we find that the trial court erred in overruling the declinatory exception of lack of subject matter jurisdiction.
Plaintiffs, a group of residential and commercial customers of Entergy, filed a class action petition against Entergy on behalf of all current and former Entergy customers in Orleans Parish who have incurred allegedly unlawful and wrongful | govercharges for utilities services provided by Entergy. Plaintiffs ask for declaratory and injunctive relief, refund of overcharges and other damages.
In its exception of lack of subject matter jurisdiction, Entergy contends that the trial court lacks original jurisdiction over the subject matter of plaintiffs’ petition. Entergy states that in matters involving the establishment of retail electric rates charged by Entergy, the Home Rule Charter of the City of New Orleans vests exclusive original jurisdiction in the New Orleans City Council. Entergy claims that the district court has only appellate jurisdiction with respect to decisions of the City Council establishing electric rates. Plaintiffs argue that Civil District Court of Orleans Parish has jurisdiction over this matter because their petition seeks a declaratory judgment as to whether a rate of return established by a 1922 City Council ordinance has ever been amended or repealed by certain resolutions. Plaintiff claims that this is not a rate case and that the declaration of law sought by plaintiffs is a uniquely judicial remedy.
At issue in this case is a 1922 City Council Ordinance (known as the “Settlement Ordinance”), which established rate-making authority to be accorded to a new company, New Orleans Public Service, Inc. (now Entergy New Orleans). Section 2 of this ordinance, dealing with rates for utilities services, states: “Fares, rates and charges for the respective services shall be such as to produce a net revenue (after operating expenses, taxes and adequate renewal and replacement and other reserves, necessary to maintain the operating efficiency of the property at all times) equivalent to 7]é percent per annum allowable rate of return on said Rate Base.”
That same year, the Council enacted additional ordinances granting NOPSI indeterminate permits (franchises) to provide electric, natural gas and transit ^services in New Orleans. In the ordinances that granted indeterminate permits to Entergy’s predecessor to provide electric and gas services, sections on gross receipts taxes state in part that “said tax shall not be imposed or paid unless (a) the grantee, its successors or assigns, shall have earned, for such calendar year, from the gross receipts as aforesaid, a return of seven and one-half (7)é) per cent, or such other reasonable return as may be legally established.” (emphasis ours)
It is undisputed that since 1975, the City Council has, by resolution, allowed higher rates of return than 1% percent for electric and gas services. Plaintiffs’ position is that the 1922 Settlement Ordinance establishes a maximum Tk percent rate of return for utilities services rates. Entergy’s position is that the 1922 Settlement Ordinance and the 1922 Franchise Ordinances, *753 collectively, set the allowable rate of return at 7/4 percent or other reasonable rate as decided by the regulator, the City Council. Entergy states that it does not contend that the subsequent resolutions amended the 1922 ordinances; rather, their position is that resolutions fixing base rates on the basis of a reasonable return do not conflict with or amend the 1922 ordinances.
Plaintiffs claim they are entitled to a declaration by the district court as to the continued force and effect of the 1922 Settlement Ordinance or, more specifically, a declaration that Entergy is limited to a maximum rate of return of 7)4 percent. Plaintiffs argue that this declaration by the district court is necessary before they proceed to the City Council for calculation of allegedly wrongful overcharges by Enter-gy. According to plaintiffs, addressing their claim to the City Council that Enter-gy is limited to a maximum rate of return of 7/4 percent would be an exercise in futility because the City Council has already indicated by its | ¿resolutions that their position is that they are not limited to a maximum 7)4 percent rate of return.
Entergy argues that plaintiffs’ claims require the interpretation or determination of the reasonableness of rates authorized by the City Council, and that such interpretation or determination is an administrative function. Entergy contends that the underlying subject matter of this dispute concerns the establishment of utility rates, a matter within the City Council's original jurisdiction.
Section 3-130(1) of the Home Rule Charter of the City of New Orleans gives the New Orleans City Council “all powers of supervision, regulation, and control consistent with the maximum permissible exercise of the City’s home rule authority and the Constitution of the State of Louisiana and shall be subject to all constitutional restrictions over any street railroad, electric, gas, heat, power, waterworks, and other public utility providing service within the City of New Orleans.” The Home Rule Charter also grants the City Council the power to change utility rates by resolution. Section 3-130(6) states as follows:
The orders of the Council fixing or establishing any rate, fare or charge for any commodity furnished, service rendered, or to be rendered, by any street railroad, electric, gas, heat, power, waterworks, or other public utility, or allocating any funds or other benefits, shall go into effect at such time as may be fixed by the Council and shall remain in effect and be complied with, unless and until changed, set aside or suspended by the Council or by a court of competent jurisdiction. Such order of the Council shall be upon a resolution or an ordinance in open council meeting and passed by an affirmative vote of a majority of all members of the Council.
We conclude that the City Council’s pronouncements regarding rate regulation, including the 1922 ordinances and subsequent resolutions, are subject to interpretation. The Home Rule Charter vests the City Council with original | [jurisdiction over matters involving regulation of utility rates. We find that the underlying subject matter of this case involves the regulation of utility rates. Because of the powers vested in the City Council under Home Rule Charter Section 3-130(1), the City Council is entitled to have the opportunity to give their interpretation of their own ordinances and resolutions before this matter goes to the trial court. We hold that the trial court lacks original subject matter jurisdiction in this case and that the plaintiffs must first present their claims to the City Council.
For these reasons, we grant Entergy’s application for supervisory writs and reverse the trial court’s overruling of Enter-gy’s exception of lack of subject matter jurisdiction. Entergy’s exception of lack of subject matter jurisdiction is maintained and plaintiffs’ action filed in the trial court is dismissed without prejudice. Because of our finding that the trial court lacks *754 subject matter jurisdiction in this matter, we need not address the remaining rulings in the trial court judgment.
WRIT GRANTED; EXCEPTION OF LACK OF SUBJECT MATTER JURISDICTION MAINTAINED; CASE DISMISSED WITHOUT PREJUDICE.
LANDRIEU, J., concurs with reasons.

. On September 9, 1999, this Court denied relator's writ application. The relator's arguments regarding the January 27, 1999 trial court judgment were not considered because the writ application was filed on May 21, 1999, more than thirty days after the January 27, 1999 ruling. Therefore, this Court found that the application for review of that-ruling was untimely under Uniform Rules - Courts of Appeal, Rule 4-3. The only ruling that this Court reviewed was the trial court’s May 3, 1999 denial of the motion for new trial. This Court found no abuse of discretion in that denial. On December 17, 1999, the Louisiana *752 Supreme Court remanded relator’s writ application to this Court for consideration and action. The Supreme Court found that "under the unique facts of this case, the court of appeal erred in declining to consider relator’s arguments regarding the trial court’s January 27, 1999 judgment on the exceptions.” Following the remand order, all parties were allowed to present oral arguments and file additional briefs in this Court.